HARRIS AND CHAUNCEY *vs.* ALCOCK——CHAPMAN AND ERSKINE *vs.* ALCOCK.—*December*, 1838.

If a party who has a judgment against another, fraudulently aids him in purchasing goods, in order that he may levy an execution upon them, or if the purchaser knowing himself to be insolvent, conceals that fact from the vendor, and has no intention when he obtains the goods to pay for them, in either case the title of the vendor would not be divested.

No inference of fraud can be drawn from the fact that one judgment is taken for three separate claims, the object being to place the creditors upon a footing of equality.

If a judgment be confessed upon a note professing to be for value received, and the creditors of the party confessing attempt to impeach the judgment, by showing that the note was not given for value, but fictitious, it is competent to those who have taken the judgment, to shew what was in fact the consideration for which the note was given.

A judgment operates as a merger, or extinguishment of the debt due the party in whose favour it is rendered—with regard to other parties, whose claims are designed to be secured by it, the judgment is a mere collateral security, and they are at liberty to prosecute any remedy at law, or equity, which was open to them prior to its rendition.

If a judgment be confessed to one, for the benefit of himself and some other creditors of the defendant, it is no objection to its validity, at the suit of other creditors who may be affected by it, that the trust does not appear upon the record. There is no principle which requires such an entry, or prohibits the proof of the trust by parol testimony.

The mere fact of issuing an execution for more than is due upon a judgment,

does not *per se* render the execution void. It is by the *quo animo* that its validity is to be tested, and if issued *bona fide* it will avail the plaintiff to the extent of the debt remaining due.

Equitable interests in personal property, cannot at law, be seized and sold under a *fieri facias.*

A court of equity, however, will not set aside a sale of such an interest, but on the contrary, if applied to for the purpose, would decree a ratification of it, upon the principle that, that will be ratified when done, which the court, upon application, would order to be done.

APPEALS from the equity side of *Baltimore* county court.

ON the 12th October, 1836, *John W. Harris* and *William Chauncey* filed their bill, alleging that at January term of said court, *Benjamin Brady* confessed a judgment in favour of *Richard E. Alcock*, in a certain fictitious action of *assumpsit*, instituted on the same day on which said judgment was confessed, for the purpose of obtaining the same by filing a declaration by consent of parties without issuing any process: that the declaration in the said action was for money had and received, and upon a promissory note for $20,000, but your orators charge that no sum of money was due from the said *Brady* to the said *Alcock;* that the note was drawn up on the day of the date of the rendition of the judgment, and was antedated ; that no consideration for the said note at the time of making thereof, or at any other time, passed between the said *Brady* and *Alcock*, that it was made solely to serve as a cause of action upon which to found the said judgment ; that it was confessed for $40,000, to be released upon payment of $20,000 ; that there was no legal claim upon which said judgment was founded, and could not have been obtained adversely, if resisted ; that to induce *Brady* to confess the judgment, the said *Alcock* told him he wanted some security to show *Alcock* and Co. and *Cartlidge*, who were creditors of *Brady*, and induced the said *Brady* to believe that the said judgment was never to be put in force against him ; that *Brady* said he was insolvent ; that *Alcock* now pretends that the said note and judgment were in consideration of certain debts due to *Samuel Alcock and Co., Charles Cartlidge*, and him, the said *Richard E. Alcock*. This the complainants

charge to be false, that nothing like $20,000 was due to all
or either of those persons, and that of what was owing to said
persons, a large portion was not then due and payable; that
no statement of accounts was made between the said *Brady*
and his said alleged creditors, to ascertain the sum due at the
time of making said note; that no receipt was given by the
said *Alcock*, as agent; or any document executed to show
that said judgment was intended to cover said debts; that
none of the evidences of the debt due from *Brady* held by
said creditors were given up at the time of said judgment,
but on the contrary, they were retained and protested for
non-payment after the rendition of said judgment; that the
said judgment is no merger of said *Brady's* debts, and that
said judgment represents a clear additional debt of $20,000,
for which there was no consideration; that Brady was in-
debted to many other persons; that after the confession of
the judgment Brady contracted various other debts for goods
in New York, with the knowledge and consent of said
*Alcock*, and particularly of your orators; that shortly after
the goods so as aforesaid purchased, or pretended to be pur-
chased in *New York*, arrived at the store of *Brady*, in *Balti-
more*, the said *Alcock* fraudulently caused to be issued a writ
of *fieri facias*, grounded upon the judgment so as aforesaid
confessed without consideration, and under pretence of the
said judgment, and by means of the said *fi. fa.* caused and
procured the sheriff of *Baltimore* county, to levy upon, and
sell all the goods, &c. in the said store contained, including
those purchased, or pretended to have been purchased of
your orators, and other persons in *New York*, with the know-
ledge and consent of the said *Alcock;* that at the time of the
sale, *Richard E. Alcock* had full knowledge of all the before
mentioned facts; that when complainants delivered their goods
to *Brady*, they were entirely ignorant of the said judgment
and insolvency of *Brady*, and that the pretended sale of the
goods by them to *Brady* is fraudulent and void; that *Henry
S. Sanderson* being sheriff of *Baltimore* county, has received
and now retains in his hands, the sum of $11,000, the pro-

ceeds of the property, so as aforesaid seized and sold, by force of the said fraudulent judgment and execution.    They also charge that a certain *Isaac Warren*, a judgment creditor of the said *Benjamin Brady*, as he alleges, has caused a writ of *fi. fa.* to be issued out of *Baltimore county* court, against the goods and chattels of the said *Brady*, and claims that the said execution has been levied upon the same property so as aforesaid seized, &c. though complainants charge that the said *last mentioned execution* was not issued until after a large part of the said goods had been *actually* sold under the first execution; that neither *Isaac Warren* nor *Richard E. Alcock*, are citizens of the state of Maryland, and do not reside therein; that your orators are apprehensive, they, or one of them, will receive the said money from the said Sanderson, and withdraw it from the jurisdiction of the court, and out of the *state*, wherefore, &c.    Prayer for *subpœna* against *Richard E. Alcock*, *Henry S. Sanderson* and *Isaac Warren*, order of publication against *Alcock* and Warren, as non-residents; that the judgment in favour of *Alcock* be vacated; that *Sanderson* be directed to pay the proceeds of sales into court; that the same be applied to the payment of the goods fraudulently obtained from your orators, and of their claims on said *Brady*, the residue in such manner as may be consonant to justice, and for further relief, &c.

The answer of *Richard E. Alcock* alleged it was true that *Benjamin Brady* did confess judgment to him at, &c.; that the proceedings were instituted on the day the judgment was confessed; that the declaration was filed by consent without issuing process, all of which he is informed is every day's practice of this court; that the declaration is truly stated in the bill; that the note was drawn on the day of the rendition of the judgment and was antedated; but he denies there was no sum of money due this defendant, by the said *Brady*, or that there was no consideration for the said note. This defendant says, that with the drawing of the said note, he had nothing to do; he neither asked for it, nor advised its being given; and never even heard any thing of it until a

few moments before it was handed to him, just prior to the confession of the judgment by his counsel, under whose conduct the whole proceedings in reference to said judgment was carried on, who seemed to think such a note desirable, and neither the said Brady objected to giving it, nor did this defendant know any reason why he should not take it. This defendant is informed by his counsel, that the said note was intended to serve as a cause of action, and as evidence of the debt, which the said *Brady* told his counsel was due. The defendant admits the judgment as alleged, denies there was no claim on which to found it; denies that he ever gave *Brady* to understand he would never take out execution on said judgment, or that he ever did any thing to induce the said *Brady* to give him the said judgment, further than to ask him for some security for the debt due those whom this defendant represented; that the said judgment was given in consequence of this application, and if there is any irregularity in the judgment, it arises from the fact, that the counsel employed was not thoroughly informed of the nature of the debt; this defendant at that time had every confidence in the said *Brady,* and left it pretty much to him to give all the necessary information to the counsel employed and to decide upon the terms. The judgment was given wholly at the said *Brady's* instance, and every thing in regard to it was dictated by him; this defendant gave few or no instructions to the counsel engaged, save requesting him to have the matter arranged as soon as he could; this defendant denies that *Brady* informed him he was insolvent, or that he knew it. The defendant claims the judgment for debts due *Samuel Alcock and Co., Charles Cartlidge and himself*; this defendant avers that all the debts for which the said judgment was confessed, were due at the time of the confession of the said judgment, the promissory note on which the said judgment was confessed, being then due; he admits that of the amounts merged in the said note, $6,602 86, was not due before the time of taking said note; but he avers at the time of giving said note and judgment, said *Brady* agreed to consider this

amount as due; he admits there was no statement of the account, because there was no difference between him and *Brady* of the amount due; that he gave no receipt; that none was asked for; that most of the debt was due upon open account; that of those which had fallen due, *Brady* never asked for; that those which became due after the confession of the judgment, said *Brady* told this defendant to present at maturity, and that they should be paid as a part of the judgment; he denies that the judgment constitutes an additional debt against *Brady;* that he never heard of the purchases from persons in *New York,* save those *Brady* contemplated making of the complainants, and of those only in a casual conversation; but he did not know that *Brady* had bought of them. The answer then admitted the taking out of the execution on the judgment on the 11th May, 1836, but defendant does not know from whom the goods were purchased which were levied on; denies all fraud in the sale, so far as he is concerned, and insists that the property in the goods legally passed from complainants to said *Brady;* and finally, he insists that his judgment should not be vacated.

The answer of *H. S. Sanderson,* sheriff of *Baltimore,* declared his ignorance of the transactions leading to the judgment. He admitted the execution and its levy on the goods found in *Brady's* store, and the public sale of them in due course of law, the proceeds being $8,622 98, and submits to such order as the court may take in the premises.

The answer of *Isaac Warren* admitted that he was a judgment creditor of *Brady,* that he caused an execution to be issued and levied upon his property; he denies that such execution was levied after the sale, under the execution of his co-defendant *Alcock,* upon the pretended and fraudulent judgment obtained by him against *Brady,* that on the contrary, that but a few of the articles first levied on had been sold under *Alcock's* execution at the time of his levy; that his execution is in all respects fair and lawful, and that he is entitled to be first paid out of the proceeds of the property.

232    CASES IN THE COURT OF APPEALS

Harris and Chauncey *vs.* Alcock—Chapman and Erskine *vs.* Alcock.—1838.

Upon this state of the pleadings the parties went into proof of their respective allegations. The facts in dispute adopted by the appellate court are fully stated in the opinion of this court, and show how the questions of law arose.

A similar bill was filed on the same day by *George Chapman* and *James P. Erskine*, against the same defendants, but in addition, these complainants claimed under an assignment from *Benjamin Brady* to them, dated 17th May, 1836, of the following terms, to wit:

This indenture made, &c. between *Benjamin Brady* of the first part, and *George Chapman* and *James P. Erskine* of the second part, witnesseth; that whereas the said *Benjamin Brady* hath heretofore sold divers goods to *James S. Whiteman*, &c. &c. and received payment therefor, and delivered part thereof, leaving a part thereof still undelivered; and whereas all that part of the said goods *not* delivered, have together with *other* goods, &c. been seized and taken by the sheriff of *Baltimore* county, under and by virtue of a writ of *fieri facias*, at the suit of *Richard E. Alcock*, against the said *Brady*, upon a judgment *the validity of which may hereafter be contested*; and whereas the said Brady is indebted to the said *grantees* and others, (enumerating a variety of creditors, and among others, *Charles Cartlidge*, towards the end of the enumeration,) and hath agreed to execute these presents for the purpose of securing the claims of the herein before named persons and creditors, *in the order in which they are herein before named*. Now this indenture witnesseth, that for and in consideration of the premises, the said *Benjamin Brady* hath assigned to the said *George Chapman* and *James P. Erskine*, all the estate, &c. of him the said *Benjamin*, whether at law or in equity, of, in, to and out of the store No. 97 in Baltimore street, and all the goods therein contained, or to which the said *Brady* is entitled wherever the same may be, whether in the said store or elsewhere, that have been levied upon as aforesaid, to have and to hold for the following purposes; 1st. to secure the persons who have purchased goods from him, and had not received them though

OF MARYLAND. 233

Harris and Chauncey *vs.* Alcock—Chapman and Erskine *vs.* Alcock.—1838.

paid for, and to pay them and the said other creditors, in the order in which such purchasers and creditors are named. The deed then declared it should be lawful for any of the persons named as creditors aforesaid, to take in satisfaction of their claims, or so far as the same might extend, rated at the prices at which they were sold to the said *Brady*, the goods that may now remain unsold by the said *Brady*, that have heretofore been sold by such persons, and in like manner that the goods that may have been sold by said *Brady* to any person named as creditors aforesaid may be taken and held by such persons, or such parts thereof as may now specifically remain; and it was also provided that said deed should in no wise be taken to prejudice any right independent thereof to such goods, *and no person should be entitled to any actual benefit under this assignment, without a release executed to the said Brady, for all claim of such person intended to be covered thereby.* This deed was duly acknowledged and recorded in *Baltimore* county court.

The authority from *Samuel Alcock and Co.* bore date the 5th March, 1835, and constituted *Richard E. Alcock* their attorney irrevocable, " for us and in our names and for our use and benefit, to ask, demand, sue for, recover and receive of and from all persons in the United States, and elsewhere, all and every sum or sums of money, debts, dues, goods, effects and things, which now are or is, or which at any time *during the term of three years,* shall become due, owing, payable, or belonging to us, and upon receipt thereof to give acquittances and discharges; also to settle accounts, pay or receive balances, and generally to do," &c.

And it appeared that by an act of *Charles Cartlidge*, dated 22d May, 1837, that he had authorized *Richard E. Alcock* to include his debt in the judgment confessed by *Brady*, and that he ratified the proceedings of said *Richard E. Alcock* in the premises. Similar answers were filed, and that bill was submitted to the county court at the same time with the bill of *John W. Harris* and *William Chauncey*, and upon the same proof by agreement.

Harris and Chauncey *vs.* Alcock—Chapman and Erskine *vs.* Alcock.—1838.

The county court (*Archer, Ch. J.* and *Purviance, A. J.*) decreed that the bills ought to be dismissed with costs, being of opinion that the judgment obtained by *Alcock vs. Brady* was founded on a valuable consideration, and was not fraudulent, and that *R. Alcock* would stand as a trustee for *S. Alcock* and *Cartlidge*, to the extent of their claims against Brady, which the judgment was taken to satisfy. The county court was further of opinion that the charge of the executions being fraudulent is not sufficiently sustained to entitle either of the complainants to relief.

From this decree the complainants appealed, and the cause was argued before Buchanan, Ch. J., Stephen, Dorsey, Chambers and Spence, Judges.

James H. Raymond, for the appellants.

This was a bill in equity filed by the appellants, for the purpose of setting aside a judgment confessed by one Benjamin Brady, in favour of the defendant, now appellee, *Alcock*. The facts are—that on the fifth day of March, 1836, a note was drawn by Brady in favour of *Alcock*, antedated the 15th February same year, (a copy of which will be found in the record,) for twenty thousand dollars, payable on demand. On the same fifth day of March, a judgment was confessed upon the said note. The bill alleges that this note and judgment were without any consideration, and that no money was due from Brady to *Alcock*. The answer of *Alcock* denies that there was "*no consideration,*" but does not set up any consideration whatever specifically. The answer of *Alcock* to another bill filed by the appellee Warren is introduced into the record as evidence. It admits the facts as to the note and judgment above stated, as in fact the answer in this case does; but it sets up as the consideration certain debts alleged to have been due from Brady to *Samuel Alcock* and company, whose agent the defendant *Alcock* was, to Charles Cartlidge, and to *Richard E. Alcock* the appellee. A schedule of these claims was annexed to the answer to Warren's bill. It is

not pretended that at the time of making the note, and confessing the judgment, any statement of these claims was made out, or that the notes, by which some of them were secured, were given up, or that any evidence was furnished to *Brady* which might enable him in any way to connect those claims with the judgment he was about to confess. Indeed the contrary is explicitly admitted in the answer to the bill filed in this cause. The same answer admits that the sum of $6602 86-100, parcel of the said sum, was not due at the time of making the note, and confessing the judgment. On examining the schedule it will be observed, that $3854 18-100 is charged on the 4th March, the day before the judgment, and after the date of the antedated note—$1571 84-100 is charged on the 8th of January, not two months before the date of the judgment, and but little more than one from the date of the note, which by referring to the notes it will be seen, that the average credit on the dealings was four or five months. Two promissory notes dated earlier than the 8th January, and therefore not relating to either of the above mentioned transactions, were not due until after the date of the judgment, as will appear by reference to the notes. The claim of Charles Cartlidge, $3882 45-100, also mentioned in said schedule, was also not due, and when due was paid, as is admitted in the answer to Warren's bill. So far was the judgment from being considered as covering the claims it is now alleged to have been intended to cover, that the notes of *Brady* were protested after the judgment was given, when upon the hypothesis of the appellants, they had ceased to exist. After the confession of the judgment, Brady went on to New York, where the appellants live, and purchased from them a large amount of goods, which were sent to him in Baltimore, and were seized, together with his whole stock in trade, upon the 11th of May, two months and six days after the date of the judgment. It is not pretended that the money paid on account of Cartlidge's claim was ever credited upon the judgment; on the contrary, the execution appears to have been issued for the original amount of the judgment. It is further to be re-

marked, that the power of attorney from *S. Alcock and Co.* to *R. E. Alcock*, only authorizes him to act in their name, and consequently not to take a judgment for their debt in his own.    It is also worthy of note, that there is no evidence of any act, except that of taking the judgment, done by *R. E. Alcock* in his own name, for account *S. Alcock and Co.* It appears from Brady's deposition, and also from a letter from Brady to *Alcock*, filed by *Alcock*, that it was with the concurrence of *Richard E. Alcock*, the appellee, that Brady purchased goods of the complainants and others in New York, after the date of the judgment, and before the execution.    It also appears from a promissory note in favour of the appellants, that they were creditors of Brady on the said fifth day of March.    It is also to be observed that for by far the greater part of the claims included in the schedule no vouchers whatever are produced.

It farther appears from the testimony, that the property which was taken under the execution as the property of *Brady*, was under a mortgage to one *Grundy*, and that *Brady* had only an equitable interest therein.

Upon the above facts it will be contended on the part of the appellants—

1. That the judgment and note of the 5th March, are fraudulent and void under the 13 of Elizabeth, as being to the prejudice of creditors.    On this point he cited: *Dulaney vs. Hoffman*, 7 *G. and J.* 170.    *De Forest vs. Bacon*, 2 *Conn. Rep.* 633.    *Houston vs. Nowland, et al*, 7 *G. and J.* 480. *Joice and Wife vs. Taylor*, 6 *G. and J.* 58.    *Watkins vs. Stockett*, 6 *H. and J.* 435.    3 *Co.* 81.    *Butts vs. Swaatmood*, 2 *Cowen*, 432.    *Rob. on Fraud*, 542.    1 *Story Eq.* 363. *Wilder vs. Fondey*, 4 *Wendell* 100, 106.    *Allison vs. Matthieu*, 3 *John. R.* 235.    *Rossiter vs. Rossiter*, 8 *Wendell*, 494. *Turner vs. Plowden*, 5 *G. and J.* 52.

2. That the said note and judgment represent a clear addition to the amount of Brady's debts, and do not merge any debt of his existing at that time, and are therefore prejudicial to his creditors, fraudulent and void.    *Birely and Holls vs.*

*Staley,* 5 *G. and J.* 432.    *Hammond vs. Ridgely,* 5 *H. and J.* 280.    *Betts vs. Union Bank,* 1 *H. and G.* 175.    *Adams vs. Paige,* 7 *Peck.* 542.    *Bowers vs. State,* 7 *H. and J.* 32.

3. That inasmuch as the claims of *S. Alcock* and *Cartlidge* are not at all referred to in the said note and judgment, which contains no evidence that he was a trustee for them, or either of them, the said judgment cannot be sustained on the ground of its being in trust for them.

4. That the execution is fraudulent as having been issued after the payment of Cartlidge's debt, even supposing that the judgment is not fraudulent.

5. That the purchase of the goods of the appellants by *Brady,* under all the circumstances of the case, was fraudulent and void, and that the property of their said goods has never passed out of them.    *Durell vs. Haley,* 1 *Paige,* 492. *Martin vs. Martin,* 23 *Law Lib.* 221.    *Allison vs. Matthieu,* 3 *John. Rep.* 235.

6. That the property taken under the execution was not legally the property of *Brady,* and that equitable interests on personal property are not the subjects of an execution, and consequently that the execution in this case ought to be set aside.    *Harding vs. Stevenson,* 6 *H. and J.* 264.    *McCombie vs. Davies,* 7 *East.* 5.    *Scott vs. Schole, et al,* 8 *East.* 476. *Bailey vs. Burton,* 8 *Wend.* 339, 346.

STEELE, for the appellee.

The controlling question is the existence of fraud in the judgment and execution.    It is a question of fact.    If we establish a *bona fide* debt, a *bona fide* confession to secure it, and no more, I do not suppose, this court upon the ground of an undeclared trust would deem the judgment fraudulent and set it aside, when these bills were filed, the only charge of fraud was on the score of a supposed conspiracy, or that *Alcock* had taken advantage of *Brady,* and then the complaint rested on the want of consideration.    This related to both judgment and execution.    The execution was only impeached on the ground of fraud in the judgment.    The answer to Warren's bill fully discloses the whole case.

The peculiar language of the answer is objected to. It follows the language of the bill, if that is objectionable so is the answer. But there is no obscurity in the whole answer. The answer was not excepted to: if a fuller answer was desired, another course should have been pursued.

The first question of fraud is under the statute of Elizabeth.

It is said these are conveyances giving an honest preference, and yet they may hinder and delay creditors. Conveyances on good consideration and *bona fide*, are excepted from the operation of the statute. A judgment is no unusual form of assurance to give a preference. *Holbird vs. Anderson*, 5 D. & E. 255.

If no lurking benefit to grantor, then it is *bona fide* when founded on a good consideration. *Wheaton vs. Sexton*, 4 Wheat. 507.

The facts show such a consideration, hence the *bona fide* character of the judgment. The evidence is found in the answer of *Alcock*, and prevails till overthrown. It insists that the debts are due. A schedule of them is exhibited with the proof.

Cartlidge's debt was agreed, subsequent to the judgment, to be paid in instalments, and as paid to be credited. Two items of the schedule are confirmed by the production of *Brady's* notes. The debts due *Alcock and Co.* are impliedly admitted by Brady in his deposition. Those of *Cartlidge* are admitted, and Brady's letters establish that of *R. E. Alcock*. There is no evidence to question the amount of these debts. These facts, with Brady's silence at the time of the confession, establish the debt represented by *R. E. Alcock*. Here the counsel went into a more particular examination of the facts to corroborate the existence of the debt.

There was then a consideration for the note, and *Alcock* stood as a trustee for those interested in that consideration. *Brady* might have confessed a separate judgment to each of the parties. The agreement to confess the judgment being carried into execution by a trustee, does not make it fraudulent, especially in a court of equity, having peculiar jurisdic-

tion over trustees to make them comply with their engagements. *Brady* had a right to pay through agents, then why not give security to an agent? He takes no more from the residue of his creditors, he gives no more to the preferred creditor by this course. An act of Brady attended with the same results, cannot be valid in one form and fraudulent in another. The judgment is like a voluntary conveyance to preferred creditors. If the judgment is honest, and defective in form, this court will heal it. *Aldridge and Higdon vs. Weems,* 2 *G. and J.* 36.

There is nothing in the form of the preference.

A note given to one, may enure to the benefit of two, they being equitably interested in the consideration. *Coursey vs. Baker,* 7 *H. and J.* 28. *Van Staphorst vs. Pearce,* 4 *Mass.* 258, 263. 2 *Kent Com.* 623. *Tolputt vs Wells,* 1 *Maul. and Sel.* 395. *Meux q. t. vs. Howell,* 4 *East.* 10.

If Brady had contested the note at law, it could not have availed him.

Then as to effect of immaturity of a part of the debt, affecting the judgment in part. The statute of Elizabeth is silent on this head. That distinction does not prevail there. Creditors holding immature debts may come in under an assignment for benefit of creditors generally. 1 *Esp. N. P.* 130.

The diminution of future contingent liabilities, is a sufficient consideration to support a deed. *Worsely, et al, vs. Demattos and Slader,* 1 *Burr,* 474. *United States vs. Hove, et al,* 3 *Cranch,* 73. *Hendricks vs. Robinson,* 2 *J. C. R.* 306. Here a *certain,* though immature liability, is a good consideration. *Crawford and Selman vs. Taylor,* 6 *G. and J.* 323, 334.

I consider the note here immaterial. It was only a part of the machinery which the attorney thought necessary as a part of the form of the confession.

*Alcock* was the agent of *Cartlidge,* of course his principal was bound by his act.

A trust results in favour of those whose funds are used in

240    CASES IN THE COURT OF APPEALS

Harris and Chauncey *vs.* Alcock—Chapman and Erskine *vs.* Alcock.—1838.

the purchase of property, whether real or personal. *Perry vs. Head,* 1 *Mar.* 47.  2 *Vent.* 366.  *Gascoigne vs. Thwing,* 1 *Vern.* 366.  *Boyd vs. McLean and Wife,* 1 *J. C. R.* 582. *Jackson vs. Matsdorf,* 11 *J. R.* 102.  *Foster vs. Jones,* 1 *McCord,* 119.

It is said the execution is fraudulent, though the judgment is not.  The amount for which the execution issued does not appear.  The grounds of fraud are not stated to be that the execution issued for too much, and therefore fraudulent. The execution is not void in toto, but only irregular as to the excess.  *Wilder vs. Fondey,* 4 *Wendell,* 100.

Now if the whole amount was not taken, as if only $8,000 is taken out of $17,000, no fraud in fact exists.  Then the question would be mistake or fraudulent intent?  *Alcock* offered to stop the execution if the debt was secured.  The execution issued without concert, and will cover what is really due.  *Hollingsworth vs. Floyd,* 2 *H. and G.* 87.  *Rudd and Miller vs. Schlatter,* 1 *Littell,* 19.

This bill is not for a general distribution, but each creditor is claiming his own, independent of all others.

An execution in the hands of the sheriff creates an equitable lien, a preference.  *Shirley vs. Watts,* 3 *Atk.* 200. *McDurmutt vs. Strong, et al,* 4 *J. C. R.* 687.  *Hadden vs. Spader,* 20 *J. R.* 554.

Those who defeat us must have a superior equity.  They come in with notice of our claim and subordinate to it. Our claim and judgment in the view of the case, are both admitted.  There was no collision in the original case.  To recover they must show superior equity.  *Ingraham vs. Wheeler,* 6 *Connec.* 277, 283.  *Atkinson and Rollins vs. Jordan, Ellis and Co.* 5 *Ohio Rep.* 298.  *The King vs. Watson,* 3 *Price,* 6.  *Austen vs. Bell,* 20 *John.* 442, 449.

R. JOHNSON, for the appellee.

As to the validity of the deed of May, 1836, in favour of *Chapman* and *Erskine,* he said there was reservation of any surplus to the grantor.  If it existed it was by implication

of law, and not in point of fact. A deed to create a prefer-
ence must not be obnoxious on other grounds. We know
that Brady is insolvent. That this deed conveys *all* his pro-
perty. The proposition now to be examined is, whether it
be competent for a debtor to strip himself of his *whole* pro-
perty, in order to make a provision for the payment of parti-
cular debts, and require a release from the creditors preferred,
whether the fund provided is adequate or not for the payment
of the entire debt? The deed requires that the creditor to
be benefited, must execute a release of the whole debt.
Such a deed is void as to all creditors. The vice which de-
stroys it, must exist with it. Does it not hinder and delay
from the day of its execution, all creditors, as well those
provided for, as those not? If it creates delay from the pe-
riod of execution, it cannot be confirmed—set up by matter
*ex post facto*. This inherent objection is independent of the
objection from creditors. The statute acts on the convey-
ance. If the deed proves, establishes *per se*, that a creditor
can have no advantage from it unless he does an act, as exe-
cute a full release, which the debtor has no right to exact,
then it is void. Here an acquittance is claimed as a condi-
tion precedent. If void as to those provided for, it is void
as to all.

Under the sixth point of the appellant, it is insisted that
the property is not liable to execution. In this question, the
court is to assume that *Brady* acquired the property honestly;
that the judgment is valid, and the debt covered by it due,
either in the whole or in part. It is said the execution will
be vacated, because the defendant had an equitable, and not
a legal title in the property levied on. Now the bill does not
proceed on such ground. It makes no such issue which is
fatal to this objection. It is not remedied by the act of
1832. Can this court reverse on a ground which forms no
part of the complainants' equity? Again, if the bill took
this ground, there is no evidence to support it. The fact
alleged is a prior mortgage by *Brady* upon the property
seized. Now there is no evidence of the mortgage in the

242· CASES IN THE COURT OF APPEALS

Harris and Chauncey *vs.* Alcock—Chapman and Erskine *vs.* Alcock.—1838.

record, and the complainants cannot rely on the parol evidence of the mortgagor that he made such an instrument. The mortgage should be here to show its extent and character. But in such matters the basis of fact should be well laid. The property was found in the possession of *Brady*, against whom the execution issued. The person having the legal estate is not a party contesting the right of the plaintiff below to make the levy he did, though advised of the fact. Then the execution proceeds. The property is sold, and is now in court for distribution. Whether strictly liable or not is immaterial. It has been levied on, and it is not competent for other creditors to object to the distribution of the sales in payment of *Alcock's* debt. · The proper course was to move to set aside the execution. The ground relied on here might have availed, on motion, at the return of the writ, and now after a motion then made and decided, they urge it here. There was a competent remedy at law.

The fifth point alleges no property in *Brady*: yet other points insist he had a right to convey. There is no evidence that *Brady*, at the time of his purchase, did not intend to pay, nor to impeach the sale to him. They have made *Brady* a witness, and the goods are his with reference to all the world.

The other points present but one question, constructive fraud and fraud in point of fact. Fraud in fact is not to be presumed. The answer he denies. Proof of two witnesses is necessary to establish. It is founded on the charge that nothing was due *Richard E. Alcock*. The objection impliedly admits that something was due to his principals. They offer no proof to rebut this implication. The proof is conclusive that the whole object of the confession was to obtain a security for a debt which subsequently fell due. We may show by parol evidence the persons really interested. A debtor may prefer any creditor. There was then a debt due. If so, no fraud either in the intention or the object.

Is the judgment a nullity, because of the *statute of* 13

*Elizabeth, ch.* 5. This only applies to judgments confessed with a fraudulent intent. He who seeks to avoid it must show a want of *bona fide* in the obtention of the judgment. If the fraudulent intent be wanting, the judgment cannot be vacated. Then as to fraud in issuing an execution for the whole, a part being paid. *Wilder vs. Fondey,* 4 *Wendell,* 100 *to* 105.

Such an issue of an execution is only evidence of fraud. If no fraudulent intént in fact, the objection is answered.

H. D. Evans, in reply :

The *statute of* 13 *Eliz.* is the polar star which directs the argument in this cause. It will be found in *Rob. on Frauds,* 1 *to* 4. We both agree that a conveyance made on a good consideration and in good faith is valid. Both must unite. We deny this judgment was confessed in good faith.

The third point raises the question whether there was any such trust for *S. Alcock and Co.* as will validate this judgment. Now if *Richard Alcock,* the plaintiff below, should get possession of *Brady's* property under the judgment, and squander it, and *Brady* still remain liable to *S. A. and Co.* then no consideration has passed from them which entitles them to look to the judgment. If a man confesses a judgment where he owes not a cent, being indebted to other persons, this of itself is a fraud and void. Then to come nearer to this claim, a judgment is confessed for $15,000, upon a claim of $5,000, this is a fraud. The effect on the creditor of the insolvent defendant is the same, whether such a judgment be for a greater or lesser sum. What is void in part for fraud is altogether void.

This judgment is attempted to be bolstered up by a resulting trust. This arises, if at all, from a consideration paid by *cestui que trust,* to whom a trust results. The principle is, that he who parts with a consideration should enjoy the benefit. A resulting trust may be proved by parol. But the question here is, did any consideration pass from *S. A. and Co.* Have they lost any thing by the transaction ? There is

**244 CASES IN THE COURT OF APPEALS**

Harris and Chauncey *vs.* Alcock—Chapman and Erskine *vs.* Alcock.—1838.

no merger in this case. A judgment in favour of *Richard Alcock* does not merge their debt. They have given no release. *Richard Alcock* has given none.

A release is not usual between parties. But when *third* parties are to be released, the release should appear, and unless some means of discharging *Brady* against the claim of *Samuel Alcock and Co.* is found as a fact in this cause, they have lost nothing. This transaction then shows no consideration consistent with honesty and good faith, which enables *S. A. and Co.* to retain rights as ·judgment creditors. There is no declaration of the use, nor of a trust. An entry of the judgment for their use would be an equitable declaration of the trust. The counsel who took the judgment knew not what the nature of the debt, nor the extent of *S. A. and Co.* and Cartlidge's claims. There was no statement, no release, no knowledge of the claim. The judgment is then a clear addition of $20,000 to *Brady's* liabilities. This is a fraud on his creditors, and the confession of the judgment by *Brady* was not *bona fide*. *Coursey vs. Baker*, 7 *H. and J.* 28.

*Richard Alcock's* power shows what he might transact in his own name, but when he settled the account, and received its amount, he was to act in the name of his principal. He settled no account, and leaves no evidence by which the transaction appears to have been conducted by him as agent. He clothes himself with the property of his employer, and leaves no trace of his right. In this judgment there was neither consideration nor good faith, neither in fact nor in law. Such a judgment, under such circumstances, reaching far beyond the real rights of the parties, must hinder and delay creditors. How can Brady's creditors defend themselves against this judgment.

To create a fictitious judgment is a fraud. Neither a declared trust, nor a resulting trust can aid it. A consideration which contradicts the judgment cannot be set up. The consideration should have been declared by writing, and not by parol. Evidence to explain the judgment is not admissible. 5 *G. and J.* 456.

This principle even applies to promissory notes. There may be a resulting trust by agreement, and the proceeds of notes, applied between third persons. As between original parties such contracts are valid. The question here is against creditors. *Adams vs. Paige,* 7 *Peck,* 547, 48, 50. This case illustrates the effect of the creditor not being under an obligation to release the debt for which the judgment was confessed. Subsequent facts shed light on such transactions. Have the parties subsequently acted as if they had released? These creditors took the ordinary means of collecting the notes previously given. They were not considered as having been merged by the judgment.

A debt not due may constitute the consideration of a trust. We complain of the fact, that a right was given by execution to enforce a large amount not due. This is not an act of good faith in reference to third parties.

A fraudulent execution may exist on a valid judgment—as where part has been paid. *Wilder vs. Fondey,* 4 *Wend.* 105.

Under the bill of *Chapman* and *Erskine,* the fifth point is not applicable, but the deed to them cannot be impeached under the statute of *Elizabeth.* That deed can only be vacated by creditors who were hindered or delayed, and *Richard E. Alcock,* the only party here, is not a creditor, neither is he hindered or delayed by it. It is in proof that he is not a creditor. The doctrine of preferences is established and maintained, except in cases of insolvency. Every debtor has a right to prefer certain creditors. The deed of May, 1836, without the clause of release, is a mere preference made in favour of the enumerated creditors. On the ground of preference it cannot be impeached. Does the clause of release affect the validity of the deed? Does it injure the preferred creditor? It only gives him an opportunity of being paid by taking under a conveyance from the benefit of which he was otherwise cut off. It required no act from *Richard E. Alcock.* It demanded no release from him. It took nothing from him. Did him no injury: and we contend that on no ground can he complain of it. If the preferred

creditors refused the deed, that act augments the balance beneficially for the others.

DORSEY, Judge, delivered the opinion of the court.

The case of *Harris and Chauncey vs. Alcock*, and *Chapman and Erskine vs.* the same defendant, resting for the most part on the same questions of law and fact, and under the opinion of the court sharing the same fate, they will be considered and disposed of together, as if forming but one case. The question which, in its natural order, *first* presents itself, is, did the property in the merchandise mentioned in the complainants' bill, as sold to *Brady*, pass out of the complainants, under the circumstances attending the sale?

It is insisted that it did not, upon two grounds.

*First*, because *Alcock* fraudently aided and assisted *Brady* in making the purchase, with a view of levying an execution thereon as soon as it should arrive in the city of Baltimore.

*Secondly*, because *Brady*, at the time of the purchase, knew himself to be insolvent, concealed this fact from the complainants, and when he obtained the goods, did not intend to pay for them.

Either of these grounds, if established, would have entitled the complainants to relief.   But, unfortunately for them, the proof in the record sustains neither of these, their pretensions, no such fraud as that imputed to either *Alcock* or *Brady* has been sustained by the testimony, and the right of property in the goods vested upon their sale and delivery.

The next ground upon which the appellants assert their right to relief, is, that the judgment confessed by *Brady* to *Richard E. Alcock*, is fraudulent and void, and in support of this assertion, they insist, that if the design of the judgment was as is alledged, to obtain by way of judgment, security for the debts due by *Brady* to *Richard E. Alcock*, *Samuel Alcock and Co.* and *Cartlidge*, that a separate judgment would have been confessed to each creditor for the amount due to him; and that the omission to pursue that course, is evidence of a fraudulent design.

Is the inference warranted by the facts and circumstances under which the judgment before us was rendered, is the question we are to consider ? *Richard E. Alcock,* we assume, was the authorized agent of *Samuel Alcock and Co.* and *Charles Cartlidge,* in obtaining the judgment designed to secure the debts due to himself, and his principals. His design doubtless was, it ought to have been, so to arrange the matter, that each of the three creditors should come in *pari passu,* in reaping the benefits to be derived from the security about to be taken, for the preservation of their claims. So far from the mode adopted to carry out the design, being any evidence of fraud, it is strong evidence that the agent intended to act with perfect fairness and justice in the transaction ; nay, it is the only mode in which he could have done so, consistently with his duty to himself and his principals. If, as has been suggested, he had obtained a separate judgment for each creditor, that mutuality and perfect equality of benefits, which was in the contemplation of the parties, would in all human probability have been frustrated ; a field would have been opened for a race of diligence between three judgment creditors, which would have operated injuriously to *Brady,* and was never contemplated by him or his creditors to whom the security was to be given. In taking the one judgment instead of the three suggested, *Alcock* acted in good faith both towards his principals and *Brady;* and their other creditors, in this respect, have no right to complain of the course which has been pursued.

It is also contended that, the judgment is fraudulent and void as against the other creditors of *Brady,* because the note of $20,000, on which it was rendered, was not given for a debt *bona fide* due from *Brady* to *Alcock,* and that this fact being established, the note is thereby impeached for fraud, and it is incompetent to offer testimony to sustain it by showing that it was given in part for a debt to *Alcock,* and for the residue on account of debts due by *Brady* to *Charles Cartlidge* and to *Samuel Alcock and Co.* The sole object of the note as is satisfactorily shewn by the proof in the record, was to facili-

248 · CASES IN THE COURT OF APPEALS

Harris and Chauncey vs. Alcock—Chapman and Erskine vs. Alcock—1838.

tate the entry of the judgment, which *Brady* had agreed to confess, as a security for the three debts referred to, which debts, by the testimony admitted in the cause, coupled with the confession of the judgment, we think are sufficiently established. The note upon its face, does not in terms say, that it was given for a debt due from *Brady* to *Alcock*, but simply promises to pay *Richard E. Alcock* the sum of $20,000 for value received; as respects its validity it is wholly immaterial whether the note was given for a debt due to *Alcock* alone, or was given to him as the authorized agent of *Cartlidge* and *Samuel Alcock and Co.* (of which authority we think the record furnishes sufficient proof) for the purpose of obtaining the judgment rendered to secure the payment of their debts. But it is insisted in behalf of the appellants, that the testimony offered by the appellee, in relation to the judgment and note on which it is founded, is inadmissible, because you cannot offer evidence to add to or contradict a deed, much less can you do so in relation to a record, which is of much greater solemnity; no evidence was adduced to add to or contradict the record. It was not offered to prove that the judgment was not rendered on the promissory note, and thus impeach the verity of the record; but the appellants having offered evidence to contradict the statement in the note, that it was given for value received, and alleging that it was wholly fictitious, without consideration, and fraudulent; the appellee, in perfect consistency with both note and judgment, offered the evidence on his part, to show that the transaction was *bona fide*, and not fictitious, without consideration and fraudulent, as was alleged; and to do this, he offered proof, not contradicting the note, not showing a different consideration from that expressed in it, but showing what in point of fact was the value received, which the note upon its face alleged to have been the consideration for which it was given. There surely on this point is no analogy between the case before us and that of *Betts and wife vs. the Union Bank of Maryland*, 1 *Har. and Gill*, 175, and the other like cases which have been cited, where the testimony objected to, was adduced to

prove a consideration of an entirely different nature from that expressed in the deed.

It is further urged, that the judgment is fraudulent and void against the other creditors of *Brady,* because the debts, to secure the payment of which it was given, were not merged in the judgment, nor were releases or receipts given therefor. There is no weight in this objection. The judgment did operate as a merger or extinguishment of the debt due to *Richard E. Alcock.* After its rendition he could prosecute no suit upon his original cause of action. But as respects the claims of *Cartlidge* and *Samuel Alcock and Co.* it was no merger or extinguishment, but a mere collateral security for the payment thereof, and did not impair the rights of those creditors to prosecute any remedy at law, or in equity, which previous to the judgment they might have sustained. It is, however, wholly immaterial whether the judgment was an extinguishment of those claims or not, or was a mere collateral security for their payment, in neither event should such receipts or acquittances have been given.

The appellants also insist, that the judgment is fraudulent and void against the other creditors of *Brady,* because it adds a new debt of $20,000 to those already owing, in as much as it did not extinguish the claims on account of which it was entered, and no releases or discharges being given therefor, payment might be enforced both of the amount of the judgment and of the claims for which it was given. But the conclusion which has been drawn, is not warranted by the premises; the payment of both cannot be enforced. By satisfying the judgment, the claims are extinguished, and by discharging the claims, the judgment is satisfied. It is likewise insisted, that if the judgment was paid, neither *Brady* nor his creditors could have proved for what debts it was rendered. *Brady* well knew for what debts the judgment was entered as a security, and his omission to take some written evidence thereof, or to provide some means of proving the same, would not make fraudulent and void a judgment, in all other respects unimpeachable.

**250**    CASES IN THE COURT OF APPEALS

Harris and Chauncey *vs.* Alcock—Chapman and Erskine *vs.* Alcock.—1838.

This court must pronounce the law upon the facts as they appear in the record, and cannot set aside a judgment as fraudulent, all the facts and circumstances in relation to which being proved, shew it to be otherwise, merely because the means of obtaining such proof in some future case may not be within the reach of the party complainant. But the difficulty apprehended is not insurmountable, a bill of discovery will readily remove it.

There is no foundation for the impeachment of this judgment, on the ground that if *Alcock* were to receive and waste the amount due thereon, the debts due to *Cartlidge* and *Samuel Alcock and Co.* would still remain in full force against *Brady,* such receipt by *Alcock* works the immediate extinguishment of those debts, and no subsequent misapplication of it can ever revive them; nor is there more weight due to the objection raised by the appellants' counsel, that the trust upon which *Alcock* holds the judgment, ought to have appeared upon the record, and cannot be proved by parol. There is no principle of law which requires such an entry upon the record, or prohibits the proof of such a trust by oral testimony. The cases referred to in the argument rest entirely on the express provision of the *statute of frauds,* and have no bearing upon the question on which they were cited.

From an attentive examination and consideration of all the evidence introduced into the record, we are satisfied that there was no fraud in the judgment rendered, or the means used in obtaining it.

The next point on which the appellants claim a reversal of this decree is, that the execution is fraudulent, as having been issued after the payment of *Cartlidge's* debt; even supposing that the judgment is not fraudulent, execution issued for the whole amount of the judgment, the payment made of *Cartlidge's* debt, not being endorsed thereon, as it should have been. The simple fact of issuing an execution for more than is due on a judgment, does not *per se* render the execution fraudulent and void. It is by the *quo animo* with which it issued, that its validity is to be tested, if issued with a

fraudulent intent it is void, but if issued *bona fide* it is not void, and will be available to the plaintiff to the extent of the debt remaining due on the judgment. *Hollingsworth's adm'r vs. Floyd, et al*, 2 *Har. and Gill*, 87, and *Rudd and Miller vs. Schlatter and Gilman*, 1 *Littell*, 19. There is nothing in the record from which any fraudulent design could be imputed to the appellee, in issuing the execution complained of. The proof in the cause repels all idea of collusion between him and the defendant, the appellants therefore are entitled to no relief on the ground of fraud in issuing the execution.

The last point raised by the appellants is, that the property taken under the execution was not legally the property of *Brady*, and that equitable interests in personal property are not the subjects of an execution, and consequently, that the execution in this case ought to be set aside. With the appellants' premises on this point as legal propositions, we see no reason to find fault, but to his consequence or conclusion as regards the exercise of the authority of a court of equity, we must be permitted to object.

It cannot be denied as a legal principle, that a debtor's equitable estate in personal property cannot at law be seized and sold under a *fieri facias*. The usual mode by which a creditor pursues such interests of his debtor, and makes them available for the payment of his debt, is to issue a *fi. fa.* and place it in the hands of the sheriff, and cause it to be levied or returned, thus showing that his remedy at law has failed; by which acts of diligence he acquires in the eye of a court of equity, a priority of right, or preference to the debtor's interest in the property, from the time his execution was placed in the hands of the sheriff, and upon application to a court of equity, he will be permitted to come in and redeem the prior incumbrance, and have a decree for the sale of the property thus disencumbered, for the payment as well of the amount of the incumbrance, as of the execution debt; or as is a more proper course of proceeding, he will obtain a decree without any clause of redemption for a sale of the absolute property; *first* to pay off the incumbrance, and then the credi-

tors' execution.    The property levied on in the case under consideration, is wholly inadequate to pay the appellees, the preferred creditors' debt.    The appellants, therefore, have no right to ask a court of equity to set aside the proceedings under the execution; they have no interest in the subject matter; courts of equity never interfere to set aside proceedings at law, but at the instance of those whose interests are affected by them.

But there is another ground upon which such interference should be refused.    A court of equity will always ratify and confirm that when done, which as a matter of course, if previously applied to, it would have ordered to be done.    If after the levy and before the sale under the execution in question, the court had been called on by the appellee, to decree the sale of the property seized under the execution, the relief asked for would have been unhesitatingly granted.    The sale then having been made by the appropriate legal officer, so far from setting aside the proceedings under the execution, the court if applied to for that purpose, had it been necessary, would have decreed the ratification of the sale which had been made.    Upon this, the last point of the appellants, see the cases of *Venable and McDonald vs. the Bank of the United States,* 2 *Peters,* 107, and *McDermott vs. Strong,* 4 *John's C. R.* 691.

The views which we have already expressed upon the points raised by the appellants, render it unnecessary for us to examine or decide the objections to several of those points suggested by the appellee, upon the pleadings and issues, &c. in the cause, or to determine the question as to the validity of the deed to *Chapman and Erskine,* under the *statute of Elizabeth.*

The decrees of the county court in the cases of *Harris and Chauncey vs. Alcock, and Chapman and Erskine vs. Alcock and others,* are affirmed with costs in this court and the court below.

DECREE AFFIRMED.